**BARTLETT v. GALLEPPI BROS. et al.**

**No. 1464-L.**

District Court, N. D. California, N. D.

May 24, 1940.

Jesse H. Steinhart and John J. Goldberg, both of San Francisco, Cal., for plaintiff.

J. A. Pardee, of Susanville, Cal., and John Curry, of San Francisco, Cal., for defendants.

LOUDERBACK, District Judge.

Order directing judgment to enter: The plaintiff seeks to recover damages for personal injuries that were sustained when his automobile collided with one of the defendant's cows. On October 4, 1935, when the accident occurred, the plaintiff was employed as a traveling salesman covering the territory of Western Nevada and California. He was receiving $250 a month salary and was 52 years old. He was driving in Lassen

278

County, California, on U. S. Highway 395, from Susanville, California to Reno, Nevada. It was about 7 P. M. and it was dark. The plaintiff was familiar with the territory, had driven over that area for about three years, and had been over the same road on other occasions. Highway 395 carries fairly heavy automobile traffic, and goes through country which has been used for years for grazing of cattle. It is hilly country, and at the point of the accident, a hill begins to level out across the foot of the valley.

On October 4th, 1935, the defendants, Galleppi Brothers, a copartnership, were in the business of raising cattle and ranging them in Lassen County. They then had about 800 heads of cattle, of which about 25–100 were upon the open range under a Taylor Grazing Act permit. The defendants stated that they ranged the cattle there "that the cattle were scattered around" because it was a very dry year (transcript page 29). The remainder of the defendant's cattle were upon enclosed land of the defendants. There was no testimony that the plaintiff knew of the feed conditions or of the habits of the cattle.

There was testimony that Highway 395, in that area, was a hard-surfaced highway, approximately 25 feet wide "at a slight elevation until it reaches a cut in the top of the hill; then it has a short decline, and comes downgrade for a short distance, until you reach the scene of the accident; and then it continues on the level of the valley" (transcript page 7). There were ridges or banks along the highway.

The plaintiff was traveling at a speed of 40–45 miles per hour. As he drove down the incline to the foot of the valley, his lights first picked out the "cloud of dust" around the cows, about 30–45 feet in front of the plaintiff's car. There were about 15–20 cows crossing the road from one side of the highway to the other. The plaintiff attempted to stop his car, but was unable to do so within that distance, and he hit one of the cows. The impact caused the accident in which the plaintiff was injured.

■ In a civil action there is no presumption or inference of negligence on the part of the owner of livestock, because of a collision between any motor vehicle and any domestic animal, on a highway. California Agricultural Code section 423,

St.1935, p. 951, reads: "* * * In any civil action brought by the owner, driver or occupant of a motor vehicle, or by their personal representatives or assignees, or by the owner of live stock, for damages caused by collision between any motor vehicle and any domestic animal or animals on a highway, there is no presumption or inference that such collision was due to negligence on behalf of the owner or the person in possession of such live stock."

■ But that does not mean that the owner of cattle can maintain the cattle with such want of ordinary care or skill as to cause injury to another, for: "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. * * *" Civ.Code Cal. § 1714.

There is, then, this duty of ordinary care and skill. As was aptly said in Drew v. Gross, 112 Ohio St. 485, 147 N.E. 757, 758, "Apart from specific statute the law imposes upon every person the duty of using his own property so as not to injure his neighbor. As conditions change and modes of life alter, the duty to observe ordinary care in the use of one's own property, while not altering in its essentials, will alter in its details. * * * When the state was established it was not in general unsafe to permit domestic animals to run at large in the highway * * *. With the growth of traffic, particularly automobile traffic, the situation is changed, but the duty to observe ordinary care remains the same."

■ The owner of any property right, including the right to graze cattle upon the open range, must observe ordinary care in the exercise of such right. Therefore, the question to be decided is whether or not the defendants were in fact negligent in the conduct of their property; and whether or not this negligence, if it existed, caused the injury to the plaintiff.

This is not the ordinary case where cattle graze upon public lands adjacent to a highway, where there is no fencing, and where cattle stray upon the high-

way by chance. The facts present an exceptional case, where the owners turned the cattle loose, knowing that since it had been a very dry year, and because of the water and feed conditions of this area, the cattle would cross and recross a well-travelled highway. The defendants stated (transcript page 29–30) that the cattle were turned loose to roam the range "right along the highway; the range is on either side". They admit that they knew that the cattle drifted back and forth across the highway in order to feed on one side of the highway and water on the other side of the highway (transcript page 30–31). Defendant Chas. A. Galeppi testified:

"Q. You knew, at that time, from the time you left your cattle out until the time you got the stock in, there would be a process of crossing the highway? A. Yes, sir.

"Q. I suppose you are familiar with the fact that cattle spend their time during the day usually around the watering place? A. Yes, sir.

"Q. And, toward dusk, they drift out to the feeding ground? A. Yes, sir.

 *  *  *  *  *

"Q. And it is also true, toward the fall of the year, the better feeding ground is usually then in the higher places? A. Yes, sir.

 *  *  *  *  *

"Q. There is a hilly region on the eastern side of the highway, in the region of this accident? A. Yes, sir.

"Q. The water is off to the west? A. Yes, sir."

The defendants also knew that U. S. Highway 395 carried fairly heavy automobile traffic. See Defendant Chas. S. Galeppi's testimony on transcript page 32:

"Q. Were you familiar with Highway 385 that runs there, in general? A. Well, yes.

 *  *  *  *  *

"Q. You knew that this highway was a fairly well-traveled highway both night and day? A. Yes, sir.

"Q. You knew that the state law permitted a speed of 45 miles an hour * * *. A. Yes, sir."

From these facts, apart from any presumption or inference, it cannot be said that the defendants used "ordinary care or skill in the management of his property". California Civil Code, sec. 1714. It is the finding of the court that the defendants did not use ordinary care or skill in the management of their property; that their actions amounted to negligence; that their negligence proximately caused the collision in which the plaintiff was injured. There was no proof in the case that the plaintiff was contributorily negligent.

Therefore, let judgment enter for plaintiff in the sum of five thousand dollars ($5,000) upon findings and conclusions of law.